CLYDE DELPH *v.* STATE OF INDIANA.

[No. 674S123. Filed August 19, 1975. Rehearing denied October 9, 1975.]

*Harriette Bailey Conn*, Public Defender of Indiana, *Eugene C. Hollander*, Deputy Public Defender, for appellant.

*Theodore L. Sendak*, Attorney General, *Lawrence B. O'Connell*, Deputy Attorney General, for appellee.

ARTERBURN, J.—On November 22, 1965, while an inmate at the Indiana State Reformatory, the Defendant and one other inmate placed a bet on the Cassius Clay-Floyd Patterson fight with Edward Williams and another inmate. The Defendant having won the bet attempted to collect the wager of several packs of cigarettes; however, the other parties refused to pay the wager to the Defendant and the other inmate.

The following morning, November 23, 1965, in the Thomas White High School, an argument broke out between the Defendant and Edward L. Williams, the victim, as to whether the Defendant was going to be paid. Following the argument, the Defendant sought out a knife and was finally able to obtain one. A short time later, while Edward L. Williams was mopping up one of the classrooms in the Reformatory high school, he was approached by the Defendant and stabbed two times, once in the left chest and once in the shoulder blade area of the left side. The victim died of the wound to the left chest since it penetrated the heart.

Immediately upon learning of the stabbing, the authorities at the Reformatory began an investigation. It was during

this investigation that the Defendant came forth and told the authorities he had stabbed inmate Williams. Clyde Delph was subsequently placed under arrest for the death of Edward Williams.

On October 10, 1966, following a trial by jury, Appellant was sentenced to life imprisonment for Second Degree Murder. Burns § 10-3404 (1956 Repl.). After two hearings, a Motion for New Trial was overruled and Appellant then received permission from this court, pursuant to Ind. R. P.C. 2(2), to file a Belated Appeal. (The Attorney General mistakenly understands this case as an appeal from the denial of post-conviction relief.)

Appellant presents two issues which were the substance of his Motion for a New Trial: (1) the verdict of the jury is not sustained by sufficient evidence; (2) Appellant received ineffective assistance of counsel from his trial attorney.

## I.

The substance of Appellant's sufficiency argument is that at the hearing on the Motion for New Trial a witness, who had not testified at trial, gave testimony which purportedly negated the elements of purpose and malice necessary for a conviction of second degree murder. This testimony contradicted the trial testimony of other witnesses and was corroborative of Appellant's own testimony at trial. In effect, then, Appellant was asking for a new trial on the basis of newly discovered evidence. Newly discovered evidence must be more than cumulative or corroborative. *Tungate* v. *State*, (1958) 238 Ind. 48, 147 N.E.2d 232; *Bruce* v. *State*, (1927) 199 Ind. 489, 158 N.E. 480. The weight and credibility of newly discovered evidence are fact questions for the determination of the trial judge. *Emerson* v. *State*, (1972) 259 Ind. 399, 287 N.E.2d 867; *Click* v. *State*, (1950) 228 Ind. 644, 94 N.E.2d 919; *Green* v. *State*, (1945) 223 Ind. 614, 63 N.E.2d 292. The trial court's findings on these questions are conclusive unless plainly in error. *Hawkins*

v. *State*, (1941) 219 Ind. 116, 37 N.E.2d 79; *Kuslulis* v. *State*, (1930) 201 Ind. 660, 171 N.E. 5; *Hinkle* v. *State*, (1910) 174 Ind. 276, 91 N.E. 1090. Furthermore, it is an established principle that newly discovered evidence must be such as would probably change the result were a new trial to occur. 8A I.L.E. *Criminal Law* § 658 (1971) and cases cited at F.N. 60. Thus, it does not appear that the trial court was wrong to judge that the newly presented testimony did not warrant the granting of a new trial.

## II.

Appellant alleges four (4) facts which constitute the basis for his claim that his trial counsel afforded him ineffective representation: (1) the attorney left the courtroom on two occasions; (2) the attorney failed to subpoena a person who allegedly would have testified in a fashion favorable to Appellant; (3) the attorney failed to inform the Court that the Appellant said he saw State's witnesses discussing testimony in the presence of the jury; (4) the attorney failed to call to the attention of the trial court an alleged deal made by the State's witnesses whereby in return for their testimony they would receive an immediate parole.

Each of these allegations was investigated at the hearings on the Motion for New Trial. During these hearings the trial judge heard testimony to the following effect. The first instance when the trial attorney left the courtroom was during the passing of an exhibit for inspection by the jury. The second instance was during the State's final argument when the trial attorney left to get a drink of water. It is not explained how these absences harmed Appellant. The name of the person not subpoenaed was not made known to the attorney until after trial. The State's witnesses did *not* discuss their testimony in the presence of the jury, and the Appellant did not make his allegation until after the trial. No evidence was presented supporting the allegation of a conspiracy between parole authorities and the inmate witnesses.

The prosecutor and two of the Reformatory personnel who conducted the investigation testified they did not offer a parole deal to anyone. We also note that at trial inmate-witness Boles was asked by Appellant's trial attorney if his forthcoming parole hearing had "any bearing on your testimony here today." Boles answered, "No, it does not."

It is obvious that Appellant has not adduced the strong and convincing proof necessary to establish the fact of ineffective representation on the part of trial counsel. In each of the four instances either the proof fails or the act, even if assumed, amounts only to trial tactics and not to conduct shocking to the conscience of the Court. *Blackburn* v. *State,* (1973) 260 Ind. 5, 291 N.E.2d 686; *Lowe* v. *State,* (1973) 260 Ind. 610, 298 N.E.2d 421; *Robbins* v. *State,* (1971) 257 Ind. 273, 274 N.E.2d 255. Appellant has not met his burden of overcoming the presumption in favor of adequate representation by counsel. *Robertson* v. *State,* (1974) 262 Ind. 562, 319 N.E.2d 833; *Haddock* v. *State,* (1973) 260 Ind. 593, 298 N.E.2d 418; *Payne* v. *State,* (1973) 261 Ind. 221, 301 N.E.2d 514.

Appellant requests that pursuant to Article 7 § 4, of the Indiana *Constitution,* enacted subsequent to Appellant's Motion for New Trial, we "review and revise" his sentence of life imprisonment. In an earlier case where the sentence was for constitutional reasons revised to a different statutory term we rejected the argument that this court could substitute "a judicially determined sentence for a legislatively determined sentence." *Landaw* v. *State,* (1972) 258 Ind. 67, 279 N.E.2d 230, 231. In *Stoehr* v. *State,* (1975) 263 Ind. 208, 328 N.E.2d 422, 427, we recently considered this question and said:

"In regard to the claimed infringement of the right of appellate review under the Indiana Constitution, we recently noted that procedural guidelines for the routine exercise of this power have not yet been formulated. As stated in Beard v. State, (1975) 262 Ind. 643, 323 N.E.2d 216, 219:

'The judicial article of our Constitution was amended in 1970 by an express grant of the power to review and revise the sentence imposed. The grant appears to go beyond our inherent power to review and revise those sentences that exceed constitutional limitations, a responsibility that we have previously recognized. Dembowski v. State, (1968) 251 Ind. 250, 240 N.E.2d 815; Hobbs v. State, (1969) 253 Ind. 195, 252 N.E.2d 498; Landaw v. State, (1972) 258 Ind. 67, 279 N.E.2d 230. Thus far, we have refrained from exercising this recently granted power and believe that it can be properly exercised only under a program of policies and procedures not yet established. We, therefore, decline the defendant's prayer for a review of his sentence.'

Our conclusion in *Beard* governs the denial of appellant's prayer for review of their sentences here."

Finding no error, we affirm.

All Justices concur.

NOTE.—Reported at 332 N.E.2d 783.