Clyde Dewain **FEYRER,** Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 18127.

United States Court of Appeals
Ninth Circuit.

Feb. 15, 1963.

Arthur D. Dempsey, San Francisco, Cal., for appellant.

Brockman Adams, U. S. Atty., David J. Dorsey, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before HAMLIN, JERTBERG and DUNIWAY, Circuit Judges.

HAMLIN, Circuit Judge.

Clyde D. Feyrer (appellant herein), Richard Williams and Vincent Watson were indicted in the United States District Court for the Western District of Washington on two counts of violations of 18 U.S.C. § 2112 (robbery of personal property of the United States) and on a third count charging conspiracy to commit a robbery in violation of 18 U.S.C. § 371. Williams and Watson entered pleas of guilty. Appellant was found guilty by a jury verdict on one count of the robbery charge, and also was found guilty of participation in a conspiracy to commit the robbery. A timely appeal was taken to this court. We have jurisdiction under 28 U.S.C. § 1291.

The specifications of error are as follows:

"1. That the trial court erred in allowing into evidence those portions of the testimony of the witness Vincent Arthur Watson which were hearsay.

"2. That the trial court erred in allowing testimony of Vincent Arthur Watson in regard to acts done after the conspiracy had ended and when appellant was not present, said acts being the disposing of various articles used or obtained in the robbery and that said articles were introduced into evidence at the trial.

"3. That the trial court erred in allowing or not limiting the evidence of the witness F.B.I. Agent Rubaiyet B. Castellow and in thereafter allowing the United States Attorney to cross-examine the defendant as to whether or not he had made statements to discover what the F.B.I. knew of the crime and to conceal the crime and its conspirators, since said testimony and said questions would mislead the jury into finding the defendant guilty of a crime with which he was not charged, namely, a continuing conspiracy to conceal the crime and obstruct justice.

"4. That the Government's refusal to allow the inspection of the criminal record of Vincent Arthur Watson and the Court's failure to order the same, while not reversible error, was unfair."

Before considering appellant's contentions, we shall briefly outline the facts. Watson testified at the trial for the government that he, Williams and appellant planned the robbery of the Veterans' Administration Hospital in Seattle. Appellant obtained material with which to make face masks for the use of Williams and Watson, assisted in fitting the masks, visited the hospital before the robbery for the purpose of comparing a diagram of the hospital with the physical layout, discussed the get away route, and told Williams and Watson that the robbery should come off "as he planned it." Prior to the robbery, appellant's car, which was similar in appearance to a stolen car to be used as a get away car after the robbery, was placed in a garage for re-

pairs.[1] Arrangements were made for Williams and Watson to meet appellant after the robbery. In accordance with the plan, Williams and Watson proceeded to the hospital. After arriving there they donned their masks, threatened the hospital employees at gunpoint, and took a cash box which contained approximately $1800 in cash and $774 in checks. They then left in the get away car. That evening appellant joined Williams and Watson at a nearby motel and received from them $100. Thereafter, Williams and Watson left for Oregon and on the way there, at a remote spot, buried the articles used in the robbery, together with the box from which the cash had been taken.

■ The record shows that after the arrest of Watson in connection with this crime, but prior to the arrest of Williams, F.B.I. agent Castellow contacted appellant and questioned him concerning his knowledge of the robbery and of the activities of Williams and Watson. Thereafter, on occasions, appellant called Agent Castellow on the telephone and had further discussions with him concerning the robbery and the activities of Williams and Watson. At the trial Castellow testified without objection to the statements made by appellant during these conversations. Appellant also testified at the trial and gave his version of these conversations. On cross-examination, he was asked the following question:

"Q. (by government counsel) Isn't it true, Mr. Feyrer, that your contacting and your interviews with the F.B.I. were to find out what they knew about the robbery and you?

"A. No, that isn't true."

Appellant's specification of error No. 3 is based on his contention that Castellow's testimony, when considered in con-

junction with this question, "would mislead the jury into finding the defendant guilty of a crime with which he was not charged, namely, a continuing conspiracy to conceal the crime and obstruct justice." A mere statement of appellant's contention is sufficient to expose its lack of merit. Appellant was directly charged with the robbery and with a conspiracy to commit the robbery and testimony concerning his connection therewith was properly admissible.

■ Watson testified that immediately after the robbery he and Williams went to the garage where Appellant's car had been taken, that Williams went into the garage and that when he came out he told Watson that the car wasn't there. He [Watson] also testified that during the trip back to Oregon after the robbery Williams told him "that he needed the money from the robbery to pay debts incurred in getting out of prison in Oregon." Appellant contends that the conspiracy had ended at the time Williams' statements were made and that therefore Watson's testimony concerning these statements should have been excluded as hearsay. We find it unnecessary to determine whether or not the conspiracy had in fact ended at the time either statement was made by Williams. Appellant did not object to either statement at the trial. Further, even had he objected, we feel that in the light of the other evidence in the record these statements were not prejudicial to him.

■ Watson testified concerning the acts of Williams and himself on the trip to Oregon in disposing of the masks, cash box and other articles used in the robbery.[2] Appellant contends that the articles were disposed of after the conspiracy had ended and that therefore testimony concerning such acts was inadmissible. Assuming arguendo that the conspiracy had ended, we feel that the testi-

1. The get away car purposely was selected to be a duplicate of appellant's car so that witnesses seeing the car would be confused by the similarity of the car to Feyrer's car.

2. During his confession, Watson told the police where these articles had been buried. They were later recovered and introduced into evidence during appellant's trial.

mony concerning these acts was clearly admissible. In this regard, the Supreme Court in Lutwak v. United States [3] stated the following:

> "Those cases dealt only with declarations of one conspirator after the conspiracy had ended. They had no application to *acts* of a conspirator or others which were relevant to prove the conspiracy. True, there is dictum in Logan v. United States, supra, [144 U.S. 263, 308–] at [page] 309, [12 S.Ct. 632, 36 L.Ed. 429] frequently repeated, which would limit the admissibility of both acts and declarations to the person performing them. This statement of the rule overlooks the fact that the objection to the declarations is that they are hearsay. This reason is not applicable to acts which are not intended to be a means of expression. The *acts*, being relevant to prove the conspiracy, were admissible, even though they might have occurred after the conspiracy ended. [citations]."

 Appellant's specification of error No. 4 requires but a brief mention. While Watson was being cross-examined by appellant's counsel, appellant's counsel stated: "Your Honor, at this time I will ask for the F.B.I. Record of Convictions." The court stated: "I don't think he has a right to it." Although appellant in his brief admits that the court was technically correct,[4] he contends that the refusal of the court to permit the inspection was unfair. We do not agree. Appellant's counsel was given a wide latitude in the examination of Watson as to his previous convictions and criminal activities.

An examination of the whole record discloses no error that would justify reversal of appellant's conviction.

Judgment affirmed.

---

3. 344 U.S. 604, 618, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

---

4. See Rule 16, Federal Rules of Criminal Procedure; 18 U.S.C. § 3500. Cf. Cooper v. United States, 9 Cir., 282 F.2d 527 (1960).